UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X

RAMON K. JUSINO,                                    :
                                                    :
                          Plaintiff,                :
                                                    :        **MEMORANDUM AND ORDER**
                -against-                            :
                                                    :        19-CV-6387 (AMD) (ST)
FEDERATION OF CATHOLIC TEACHERS,                    :
INC.,                                               :
                                                    :
                          Defendant.                :
------------------------------------------------------------ X

**ANN M. DONNELLY**, United States District Judge:

The plaintiff commenced this action on November 12, 2019 alleging claims under the

National Labor Relations Act ("NLRA"), New York State Human Rights Law ("NYSHRL"),

and New York City Human Rights Law ("NYCHRL").  (ECF No. 1.)  The defendant moved to

dismiss the complaint on April 10, 2020 (ECF No. 12), and the Honorable Eric N. Vitaliano

referred the motion to the Honorable Steven Tiscione for a Report and Recommendation

("R&R").[1]

Judge Tiscione issued a thoughtful R&R on March 26, 2021, recommending that the

Court grant the defendant's motion to dismiss for lack of subject matter jurisdiction, and decline

to exercise jurisdiction over the plaintiff's remaining state law claims.  (ECF No. 15.)  The

plaintiff filed a timely objection on April 1, 2021.  (ECF No. 17.)   The defendant replied on

April 16, 2021.  (ECF No. 18.)  For the reasons set forth below, I adopt the R&R in its entirety.

---

[1] This case was transferred to me on July 21, 2021 pursuant to Judge Vitaliano's Order of Recusal.  (ECF
No. 19.)

## BACKGROUND[2]

The plaintiff was a teacher at a New York Catholic school until August of 2018.  (ECF No. 1 at ¶ 5.)  The defendant, a labor organization with exclusive bargaining authority for "thousands of teachers and other professionals employed at Roman Catholic elementary and high schools," represented the plaintiff in a collective bargaining agreement.  (*Id.* at ¶ 6.)  Through the Association of Catholic Schools, the plaintiff's school was party to a collective bargaining agreement ("CBA") with the defendant.  (ECF No. 12-2.)  As relevant here, the CBA included anti-discrimination provisions protecting teachers from discrimination on the basis of race, sex, and disability, among other characteristics.  (ECF No. 1 at ¶¶ 14-15.)  The CBA also provided for a grievance procedure whereby a formal hearing would be held within twenty days of a request, or as soon as a hearing officer was available.  (*Id.* at ¶ 45.)

In July and August of 2018, the plaintiff's employer sent him two letters of suspension with intent to discharge.  (ECF No. 1 at ¶ 8.)  The plaintiff contacted the defendant and claimed that his employer was retaliating against him for complaining about sex, race, and age discrimination against himself and race discrimination against a student.  (*Id.* at ¶ 16.)  On September 5, 2018, the defendant notified the plaintiff's employer that it was initiating formal grievance procedures on his behalf.  (*Id.* at ¶ 9.)  However, the defendant did not pursue a discrimination claim, believing that the arbitrator would be willing to hear only contractual claims, not federal or state discrimination claims.  (*Id.* at ¶¶ 17, 21–24.)  The plaintiff subsequently filed a discrimination lawsuit against his employer in federal court, which has since settled.  (*Id.* at ¶¶ 18, 37.)

---

[2] The facts are taken from the complaint, assumed to be true for purposes of this motion, and are read in the light most favorable to the plaintiffs.  *See Kleinman v. Elan Corp.*, 706 F.3d 145, 152 (2d Cir. 2013).  Certain factual references are drawn from the R&R.  (ECF No. 15 at 1–4.)

The plaintiff cites a number of perceived inadequacies in the defendant's arbitration strategy that he believes amount to a failure to provide him with adequate representation.  First, the plaintiff takes issue with the defendant's choice not to raise discrimination claims at the arbitration, which he believes weakened his case.  (*Id.* at ¶¶ 31–32.)  Additionally, he claims that the defendant committed a "grossly negligent" error by failing to follow the precise protocols in the CBA for requesting an arbitration, particularly by neglecting to mention the word "hearing" in its September 5, 2018 letter to his employer.  (*Id.* at ¶¶ 28–29.)  This, he argues, allowed the 20-day limitation period in the CBA to lapse, jeopardizing his case when the matter was eventually heard by an arbitrator in May 2019.  (*Id.* at ¶ 29–30.)  Relatedly, the plaintiff alleges that the defendant's missteps deprived him of the right to a speedy resolution of his grievance that is guaranteed in the CBA.  (*Id.* at ¶¶ 34–36.)  He also alleges that the defendant discriminated against him.  (*Id.* at ¶ 38.)

## STANDARD OF REVIEW

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005).  Although a court "must accept as true all material factual allegations in the complaint[,]" it must not draw inferences favorable to the party asserting jurisdiction, *J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004), and it may consider evidence outside the pleadings, *Makarova*, 201 F.3d at 113.  Subject matter jurisdiction is a threshold issue, and when a defendant moves to dismiss under both Rules 12(b)(1) and 12(b)(6), the court must address the 12(b)(1) motion first. *See Polera v. Bd. of*

*Educ. of Newburgh Enlarged City Sch. Dist.*, 288 F.3d 478, 481 (2d Cir. 2002). Because the plaintiff is proceeding *pro se*, his pleadings are held "to less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *accord Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). A party's objections must be specific; where a party "makes only conclusory or general objections, or simply reiterates [the] original arguments, the Court reviews the Report and Recommendation only for clear error." *Pall Corp. v. Entegris, Inc.*, 249 F.R.D. 48, 51 (E.D.N.Y. 2008) (quoting *Barratt v. Joie*, No. 96-CV-324, 2002 WL 335014, at *1 (S.D.N.Y. Mar. 4, 2002) (internal quotation marks omitted)). The district judge must evaluate proper objections *de novo* and "may accept, reject, or modify the recommended disposition." Fed. R. Civ. P. 72(b)(3).

"[E]ven in a *de novo* review of a party's specific objections," however, "the court will not consider 'arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance.'" *Brown v. Smith*, No. 09-CV-4522, 2012 WL 511581, at *1 (E.D.N.Y. Feb. 15, 2012) (quoting *Kennedy v. Adamo*, No. 02-CV-1776, 2006 WL 3704784, at *1 (E.D.N.Y. Sept. 1, 2006)) (alterations omitted). Moreover, "the district court is 'permitted to adopt those sections of a magistrate judge's report to which no specific objection is made, so long as those sections are not facially erroneous.'" *Sasmor v. Powell*, No. 11-CV-4645, 2015 WL 5458020, at *2 (E.D.N.Y. Sept. 17, 2015) (quoting *Batista v. Walker*, No. 94-CV-2826, 1995 WL 453299, at *1 (S.D.N.Y. July 31, 1995)).

**DISCUSSION**

The plaintiff objects to Judge Tiscione's recommendation that his claims be dismissed for lack of subject matter jurisdiction, rehashing the same arguments made in his briefing in opposition to defendant's motion to dismiss.  (ECF No. 13-1.)  As a result, the R&R need only be reviewed for clear error.  *Sanders v. City of New York*, No. 12-CV-113, 2015 WL 1469506, at *1 (E.D.N.Y. Mar. 30, 2015).  However, given the purely legal nature of the jurisdictional issue, I review the issue *de novo.  See Rapid Anesthesia Sols., P.C. v. Hajjar*, No. 17-CV-4705, 2019 WL 263943, at *2 (E.D.N.Y. Jan. 18, 2019).

The Court's subject matter jurisdiction over the plaintiff's fair representation claim is predicated upon the National Labor Relations Act ("NLRA" or the "Act") § 301, which establishes the jurisdiction of federal courts over "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations." 29 U.S.C. § 185(a).[3]  While a fair representation claim might normally suffice to invoke the Court's broad jurisdiction over labor disputes, the plaintiff's former employer's status as a religious school alters the analysis and deprives the Court of jurisdiction.  This conclusion is compelled by *N.L.R.B. v. Catholic Bishop of Chicago*, 440 U.S. 490 (1979), in which the Supreme Court held that, absent "clear expression of an affirmative intention of Congress that teachers in church-operated schools should be covered by the Act," the grant of jurisdiction in § 301 should be read to avoid the "significant risk that the First Amendment will be infringed" by labor law intrusion into

---

[3] Congress amended NLRA in 1947 with the Labor Management Relations Act ("LMRA"), which, among other things, "provide[d] a mechanism by which an employee may sue in federal court to enforce a collective bargaining agreement negotiated pursuant to the practices and procedures set out in the NLRA."  *Vlaskamp v. Eldridge*, No. 01-CV-7348, 2001 WL 1607065, at *2 (S.D.N.Y. Dec. 17, 2001).  Unless otherwise specified, references in this Order to NLRA include the amendments made by LMRA.

parochial education.  *Id.* at 502–06.  Based on this straightforward reading of *Catholic Bishop* and subsequent cases applying that decision, Judge Tiscione concluded that the plaintiff, whose NLRA claims are based upon his employment as a Catholic school teacher, are beyond the scope of the Court's jurisdiction.  (ECF No. 15 at 6–7.)

Citing the jurisdictional language in NLRA § 301, the plaintiff claims that Judge Tiscione conflated the issue of jurisdiction with the merits of his claim.  (ECF No. 17 at 2.)  He focuses in particular on subsection (c) (entitled "Jurisdiction"), which provides that "district courts shall be deemed to have jurisdiction of a labor organization (1) in the district in which such organization maintains its principal office, or (2) in any district in which its duly authorized officers or agents are engaged in representing or acting for employee members."  29 U.S.C. § 185(c).[4]  In *Catholic Bishop*, the Supreme Court did not base its decision on a purely textual reading of § 301, but rather on the canon of constitutional avoidance.  *Catholic Bishop*, 440 U.S. at 500.  This principle, combined with a review of NLRA's legislative history, led the Court to conclude that parochial school teachers are excluded from the scope of the Act.  *Id.* at 507.

*Catholic High School Association of Archdiocese of New York v. Culvert*, 753 F.2d 1161, 1164 (2d Cir. 1985) is not to the contrary.  In *Culvert*, the Second Circuit considered whether New York's own State Labor Relations Board ("SLRB") could, consistent with the First Amendment, exercise jurisdiction over labor disputes involving teachers at parochial schools. *Id*.  Unlike the NLRA, the New York statute at issue in *Culvert* explicitly covered parochial school teachers.[5]  Based on that statutory language, the Second Circuit held that "even if the

---

[4]  This provision defines the geographic location of courts in which a given NLRA claim may be brought.  As mentioned above, the statute grants federal courts jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations".  29 U.S.C. § 185(a).

[5]  Indeed, the Second Circuit distinguished *Catholic Bishop*, which addressed whether "the National Labor Relations Board (NLRB) lacked jurisdiction over lay teachers because Congress had not affirmatively

exercise of [SLRB] jurisdiction has an indirect and incidental effect on employment decisions in parochial schools involving religious issues, this minimal intrusion is justified by the State's compelling interest in collective bargaining."  *Id.*

In *Ferro v. Association of Catholic Schools*, 623 F. Supp. 1161 (S.D.N.Y. 1985), the court held that a plaintiff's state labor law claims were not preempted because *Catholic Bishop* and *Culvert* made it clear "that the NLRA does not cover parochial school teachers."  *Id.* at 1165. *See also, e.g.*, *Vlaskamp v. Eldridge*, No. 01-CV-7348, 2001 WL 1607065, at *2 (S.D.N.Y. Dec. 17, 2001) ("If we do not have jurisdiction under the NLRA over church-operated schools then we cannot have jurisdiction over them under the LMRA. For this reason, we follow the holding in *Ferro* and find that we do not have jurisdiction to hear this case.").

The only possible ground on which to distinguish the above cases from the plaintiff's claim is that the plaintiff is not suing a religious school or association of religious schools; he is suing the labor union that represents teachers at Catholic schools.  As Judge Tiscione noted, however, the language in *Catholic Bishop* and subsequent cases focuses on claims brought by teachers, and does not suggest that there is a distinction between suits against labor unions that represent Catholic school teachers and the schools themselves.  (*See* ECF No. 15 at 7–8); *Catholic Bishop*, 440 U.S. at 507 ("[I]n the absence of a clear expression of Congress' intent to bring *teachers* in church-operated schools within the jurisdiction of the Board, we decline to construe the Act in a manner that could in turn call upon the Court to resolve difficult and sensitive questions arising out of the guarantees of the First Amendment Religion Clauses." (emphasis added)).  As a result, the nature of the plaintiff's fair representation claim does not alter the jurisdictional outcome under § 301.

---

indicated that it intended them to be covered by the National Labor Relations Act (NLRA)."  *Culvert*, 753 F.2d at 1164.  The SLRB, on the other hand, had a clear legislative directive.

## CONCLUSION

For the reasons stated above, I adopt the Report & Recommendation in its entirety.  The defendant's motion to dismiss pursuant to Rule 12(b)(1) is granted, and the plaintiff's NLRA fair representation claim is dismissed with prejudice.  The plaintiff's state law claims are dismissed without prejudice to their repleading in a state court of appropriate jurisdiction.  The Clerk of Court is respectfully directed to mail a copy of this Order to the plaintiff, enter judgment in favor of the defendant and close this case.

**SO ORDERED.**

s/Ann M. Donnelly
_____
ANN M. DONNELLY
United States District Judge

Dated: Brooklyn, New York
      August 5, 2021